# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2994
_____

United States of America

*Plaintiff - Appellee*

v.

Charles Lee Anderson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: June 12, 2026
Filed: July 31, 2026
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

During a traffic stop for a broken taillight, law enforcement officers found a pistol and a shotgun inside the vehicle Charles Lee Anderson was driving. Anderson was indicted for unlawful possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871, and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Anderson moved to suppress all physical evidence obtained during the stop as well as incriminating statements he made,

claiming law enforcement unlawfully prolonged the stop and frisked him without reasonable suspicion. While the district court[1] agreed that the frisk was unlawful, it only suppressed a pocketknife found during the frisk and the incriminating statements made after Anderson's arrest and before he received <u>Miranda</u> warnings. After the partial denial of his suppression motion, Anderson pled guilty to both counts, reserving the right to seek review of the orders relating to the motions to suppress. Anderson now appeals, arguing the guns and incriminating statements should have been suppressed as fruit of the unlawful frisk. We affirm.

## I.    BACKGROUND

The facts recounted below were found by the magistrate judge and adopted by the district court. While on routine patrol, Maryland Heights police officer Alexander Waldroup and his partner initiated a traffic stop after observing a vehicle with an inoperable passenger-side brake light. Anderson was driving the vehicle, and his wife was seated in the passenger seat. Other officers arrived on the scene shortly thereafter as is a customary community policing response in Maryland Heights. Officer Waldroup and another officer who had arrived on scene each wore a body camera, which captured the interactions between the law enforcement officers and the Andersons.

Officer Waldroup approached the vehicle, which now had its driver-side window partially open. Officer Waldroup informed Anderson of the basis for the stop and asked for his license and proof of insurance. Anderson indicated he had dropped his wallet under his seat and needed to retrieve the proof of insurance from the center console. As he retrieved his insurance information, Anderson moved in a manner to block the center console view, which aroused Officer Waldroup's suspicion that Anderson might be either retrieving or concealing a weapon.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Noelle C. Collins, United States Magistrate Judge for the Eastern District of Missouri.

Anderson then removed a phone from the center console and asked for permission to exit the vehicle to pick up his wallet. Officer Waldroup perceived Anderson's conduct as unusual but allowed him to exit, asking him if he had any guns or anything else that could get Anderson in trouble. Anderson responded that he had a pocketknife. Officer Waldroup replied, "I'm going to pull that out, cool," and briefly frisked Anderson, removing the pocketknife from his front pants pocket.

After the frisk, Anderson sought to retrieve a second phone from the center console to create a hot spot so he could access his insurance on his phone. Still suspicious of the center console, Officer Waldroup asked Nancy, who was still in the car, to bring the phone. Instead of retrieving the phone from the center console, Nancy brought her phone, making Officer Waldroup even more suspicious of the center console. Officer Waldroup began questioning Nancy about the center console, and Anderson told Nancy to "tell him what's in [it]." After initially claiming paperwork, Nancy then stated the console contained a pistol registered to her. Anderson admitted that he was a two-time convicted felon but stated it was Nancy's pistol, not his. When Officer Waldroup asked to search the car, Anderson responded that he did not care but it was Nancy's car. Officer Waldroup asked Nancy for permission to search the car, and after answering Nancy's question about why they wanted to search, she consented.

Officer Waldroup found a loaded pistol in the center console. In the trunk, he found a duffel bag containing men's items and a holster for a handgun, which caused him to believe the pistol belonged to Anderson.[2] Officer Waldroup arrested Anderson and took him to the police station for questioning. After they left, other officers continued the search and found a sawed-off 12-gauge shotgun. At the station, Officer Waldroup read Anderson his Miranda warnings, and Anderson proceeded to make incriminating statements.

---

[2]Law enforcement later discovered the holster did not go with the pistol from the center console.

-3-

After being charged, Anderson moved to suppress all physical evidence obtained during the traffic stop, arguing that Officer Waldroup lacked reasonable suspicion to prolong the traffic stop and to frisk him. He also moved to suppress incriminating statements he made during the traffic stop and later while in custody. The magistrate judge issued a report and recommendation finding that Officer Waldroup did not unlawfully prolong the traffic stop but that he lacked reasonable suspicion for the frisk. The magistrate judge recommended the district court suppress only the evidence found during the frisk—the pocketknife—and any incriminating statements Anderson made after being arrested at the scene until he was provided with his Miranda warnings. The district court adopted the report and recommendation. After the district court declined to suppress the guns and other incriminating statements, Anderson entered a guilty plea reserving the right to appeal the suppression holdings.

## II. DISCUSSION

Anderson challenges the district court's refusal to suppress the two guns found during the search of the car and incriminating statements he made after being given his Miranda warnings, claiming they are fruit of the unlawful frisk. We review the district court's legal conclusions for the denial of a motion to suppress *de novo* and its factual determinations for clear error. United States v. Hastings, 685 F.3d 724, 727 (8th Cir. 2012). We will affirm unless the district court's decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." Id. (quotation omitted).

The exclusionary rule generally prevents the government from using "[e]vidence obtained in violation of the Fourth Amendment . . . in a criminal proceeding against the victim of the illegal search and seizure." United States v. Miller, 11 F.4th 944, 954 (8th Cir. 2021) (quotation omitted). It "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the

poisonous tree." Hastings, 685 F.3d at 728 (quotation omitted). To warrant exclusion, the illegality must be "a but-for cause of obtaining the evidence." Id. (quotation omitted); see also Hudson v. Michigan, 547 U.S. 586, 592 (2006) (explaining that "but-for causality is only a necessary, not a sufficient, condition for suppression"). Anderson "bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." United States v. Riesselman, 646 F.3d 1072, 1079 (8th Cir. 2011) (quotation omitted). Only after Anderson establishes a factual nexus does the burden shift to the government to show "the evidence obtained after the illegal search was not come at by exploitation of that illegality but instead by means sufficiently distinguishable to be purged of the primary taint." Id. (cleaned up).

Anderson has not satisfied this burden. Anderson argues the frisk contributed to an unduly coercive atmosphere and, but-for the frisk, he would not have consented to the search. In support of his argument, Anderson primarily points to circumstances other than the frisk, such as the presence of two police cars, five officers on the scene, and a barking police canine, to show the coercive nature of the "police-dominated atmosphere." But the other officers spoke little or not at all to Anderson, and the dog remained in the police car during the entire stop. Officer Waldroup's conversation with Anderson maintained a cordial tone throughout the stop. They discussed Anderson's pending move and joked about his job. The gas station where the stop occurred remained open, and foot traffic from other customers continued. The district court found the circumstances surrounding the stop were, at most, "mildly coercive."

The frisk was not so remarkable or egregious that it made the encounter unduly coercive, even assuming Officer Waldroup lacked reasonable suspicion.[3]

---

[3]Because the government does not argue reasonable suspicion supported the frisk, we assume it did not for purposes of this appeal. See Ivey v. Audrain Cnty., 968 F.3d 845, 850-51 (8th Cir. 2020) ("Though we may affirm a district court's decision on any ground that the record supports, . . . we usually do so when a party

Officer Waldroup initiated the frisk after Anderson exited the car and revealed he had a pocketknife. The frisk was brief, lasting roughly 30 seconds. And Anderson appeared calm during the frisk, telling Officer Waldroup the pocketknife was in his right pocket. Officer Waldroup only seized the pocketknife and did not discover any other weapons or contraband during the frisk.

Nor was the stop unduly extended. Roughly nine minutes passed between the frisk and Officer Waldroup's request to search the car. During that time, Anderson disclosed that he was a two-time convicted felon, and Nancy admitted there was a gun in the center console.[4] Even so, Officer Waldroup asked for permission to search the car, which was granted by both Anderson and his wife. Based on these findings, the district court rejected Anderson's argument that the unlawful pat-down tainted his consent to the search. Finally, the court found the additional incriminating statements Anderson seeks to suppress occurred after Anderson had been taken to the police station and read his Miranda warnings, nearly 90 minutes after the frisk. There is no clear error in the district court's findings of fact and no legal error in the district court's refusal to suppress the additional physical evidence and incriminating statements.

## III. CONCLUSION

We affirm the judgment of the district court.

———————————————————

---

advances that alternative ground, not when we raise the matter sua sponte without giving the appellant a chance to respond.") (citation omitted).

[4]Those admissions may have provided Officer Waldroup probable cause to believe Anderson was unlawfully in possession of the gun, allowing him to search the car without the need for Anderson's or Nancy's consent. But we also need not address that issue.